UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TROYLETTE BURTON, *et. al.*,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>MOISES FONSECA, *et. al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 3:20-cv-00190-ART-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF Nos. 84, 85] |

This case involves a civil rights action filed by Troylette Burton, Thayer Burton, and Troylette Burton as Administrator of the Estate of Thayer Joseph Burton's (collectively referred to as "Plaintiffs") against Defendants Moises Fonseca ("Fonseca"), Robert Smith ("Smith"), and Isidro Baca ("Baca") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 84) Plaintiffs responded to the motion, (ECF No. 86), and Defendants replied (ECF No. 90). Also pending before the Court is Plaintiffs' motion for summary judgment. (ECF No. 85). Defendants responded to the motion, (ECF No. 88), and Plaintiffs replied, (ECF No. 89). For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 84), be denied, and Plaintiffs' motion for summary judgment, (ECF No. 85), be denied.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On March 25, 2020, Plaintiffs, who are the parents and Estate of Thayer Joseph Burton ("Burton"), initiated this civil rights action pursuant to 42 U.S.C. § 1983, on behalf of former inmate Burton, who was killed while incarcerated at the Northern Nevada

---

[1]   This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

Correctional Center ("NNCC"). (ECF No. 1.) The Complaint asserts four counts: (1) Eighth Amendment violation of duty to protect against Defendants; (2) supervisory liability against Baca; (3) survival of damages under Nevada State law (NRS 41.100) against Defendants; and (4) wrongful death under Nevada State law (NRS 41.085) against Defendants. (ECF No. 1.)[2]

Defendants Fonseca and Smith were employed as correctional officers at NNCC and were on duty at the time of the alleged incident. (ECF No. 11 at 2, 5.) Defendant Baca was employed by NNCC as the Warden at the time of the alleged incident. (*Id.* at 2; ECF No. 84-4 at 2.)

According to the investigation detail report, on May 15, 2018, at around 3:40 PM, Burton was attacked, stabbed, and killed by a fellow inmate Robert R. Rowland ("Rowland"). (ECF No. 84-1 at 2.) The incident occurred in Unit 5 at NNCC. (*Id.*) Burton was a Black male who was 27 years old at the time of his death and was serving a life sentence because of a conviction for first degree murder. (ECF No. 1 at 7:12-13; ECF No. 11 at 4:16; ECF No. 85 at 3-4.) Rowland was a White male, and a documented member of the Aryan Brotherhood ("AB"), who was also serving a life sentence because of a conviction for first degree murder. (ECF No. 1 at 7:14-16; ECF No. 11 at 4:17.) Prior to May 15, 2018, Rowland committed a murder while he was incarcerated by the NDOC. (ECF No. 1 at 7:17-18; ECF No. 11 at 4:18.)

Defendant Fonseca was the sole correctional officer assigned to Unit 5 at the time of the incident. (ECF No. 84-1 at 2.) Fonseca reports as follows:

---

[2] The Complaint originally named former Nevada Attorney General Adam Laxalt, former Nevada Secretary of State Barbara Cegavske, and former Nevada Governor Brian Sandoval as defendants to Counts I, III, and IV. (*See* ECF No. 1.) However, the parties stipulated, and the Court approved, to dismiss with prejudice all claims against these defendants. (ECF Nos. 26, 28.) In exchange for Plaintiffs' agreement to dismiss the Complaint against Laxalt, Cegavske, and Sandoval, the parties also stipulated and agreed that (1) Defendant Baca is the final policymaker as to all matters asserted in the Complaint (excluding budgetary); and (2) Defendants waived any defense related to lack of adequate funding. (ECF Nos. 27, 29.)

> On May 15, 2018, I Correctional Officer M. Fonseca was assigned to Unit 5 (SOLO) at Northern Nevada Correctional Center. At approximately 15:41, I heard a commotion coming down B-Wing. As I turned around to see what it was, I witnessed Inmate T. Burton #1040822 running towards the staff office with Inmate R. Rowland #66337 chasing after him. Inmate Burton slammed in to the staff office door, causing it to swing open. At the same time Burton dropped to his knees. At this time I could see Burton had blood running down from his neck to his chest. I immediately closed the staff office door securing myself and inmate Burton from inmate Rowland. At approximately 15:41, I called for assistance and specifically requested medical, as I could see Burton bleeding from his neck onto his upper torso. I witnessed inmate Rowland brandishing what appeared to be an inmate made weapon (shank) and attempting to open staff office door. I then instructed inmate Rowland to get on the ground at which point he ignored my verbal commands and stated "FUCK YOU" "I GOT THAT NIGGER" and continued to make threats. I then witnessed inmate Rowland walking towards B-wing still brandishing his weapon. A few seconds later inmate Rowland returned to unit's rotunda making threats towards African American inmates, I then witnessed inmate Rowland attempting to stab inmate Bosco #1162477 at which he failed. At approximately 15:42 Inmate Rowland was tased and restrained. At approximately 15:45, unit was secured and medical arrived on scene. End of report.

(*Id.* at 2-3 (emphasis in original).)

In support of Defendants' motion for summary judgment, Defendant Baca submitted a declaration, which states the following: at the time of Burton's death, Baca was the Warden at NNCC. (ECF No. 84-4 at 2.) Baca approved Rowland to be housed in the general population at NNCC, and prior to the approval Baca spoke with Rowland and checked his prison records to confirm his status as a Security Threat Group ("STG") dropout. (*Id.*) His dropout status was confirmed by the Inspector General. (*Id.*) Baca did not witness the attack. (*Id.*) Baca had no prior knowledge that there was "bad blood" between Burton and Rowland and he "was never aware that there may have been a problem between the two." (*Id.*) Baca was unaware of any threat Rowland may have made to Burton prior to the attack. (*Id.*) Prior to the attack there was no indication of anything unusual on the tier. (*Id.*) Baca was not responsible for assignment of inmates to NNCC, this was done by the Offender Management Division ("OMD") who classifies inmates according to various factors. (*Id.*)

In support of Defendants' motion for summary judgment, Harold Wickham

("Wickham"), Deputy Director of NDOC submitted a declaration, which states the following: on October 26, 2016, Wickham presided at a classification hearing for inmate Rowland. (ECF No. 84-5 at 2.) Rowland indicated he wanted his status changed to STG dropout. (*Id.*) Rowland provided documents that showed he had left the Aryan Brotherhood ("AB") and had offered testimony against AB members, so he did not want to be housed with other AB members, as he feared for his safety. (*Id.*) His classification was changed on that date to STG dropout. (*Id.*)

In support of Defendants' motion for summary judgment, Defendant Smith submitted a declaration, which states the following: at the time of Burton's death, Smith was a senior Correctional Officer. (ECF No. 84-6 at 2.) Smith was not assigned to the unit where the attack occurred, and he did not witness the attack. (*Id.*) Smith had no prior knowledge that there was "bad blood" between Burton and Rowland and he "was never aware that there may have been a problem between the two." (*Id.*) Smith was unaware of any threat Rowland may have made to Burton prior to the attack. (*Id.*) Prior to the attack there was no indication of anything unusual on the tier. (*Id.*) Smith was not responsible for the classification of the inmates at NNCC, this was by OMD who classified inmates according to various factors. (*Id.*) On the day in question, Smith had contact with a group of African American inmates, including Burton. (*Id.*) Smith had a "pleasant conversation" with them, and they did not express concerns for their safety. (*Id.*)

In support of Defendants' motion for summary judgment, Defendant Fonseca submitted a declaration, which states the following: at the time of Burton's death, Fonseca was a Correctional Officer, assigned to the unit where the attack occurred. (ECF No. 84-7 at 2.) Fonseca did not witness the attack. (*Id.*) Fonseca had no prior knowledge that there was "bad blood" between Burton and Rowland and he "was never aware that there may have been a problem between the two." (*Id.*) Fonseca was unaware of any threat Rowland may have made to Burton prior to the attack. (*Id.*) Prior to the attack there was no indication of anything unusual on the tier. (*Id.*) Fonseca was not responsible for the classification of the inmates at NNCC, this was by OMD who classified inmates according

to various factors. (*Id.*)

On April 24, 2023, Defendants filed a motion for summary judgment arguing: (1) there is no evidence that any of the Defendants were aware of a substantial risk to Burton; (2) there is no evidence that Baca is liable for supervisory liability; (3) if the Court dismisses the Section 1983 claims, it should remand the state law claims to state court; and, (4) Defendants are entitled to qualified immunity. (ECF No. 84.) On April 24, 2023, Plaintiffs also filed a partial motion for summary judgment arguing they are entitled to summary judgment on their Eighth Amendment claim for failure to protect and on their claim for supervisory liability. (ECF No. 85.)

## II.   LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative

1  opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient
2  to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless,*
3  *Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

4  The moving party bears the initial burden of demonstrating an absence of a genuine
5  dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of
6  proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable
7  trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984.
8  However, if the moving party does not bear the burden of proof at trial, the moving party
9  may meet their initial burden by demonstrating either: (1) there is an absence of evidence
10 to support an essential element of the nonmoving party's claim or claims; or (2) submitting
11 admissible evidence that establishes the record forecloses the possibility of a reasonable
12 jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*,
13 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d
14 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising
15 therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763
16 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary
17 judgment, the nonmoving party is not required to provide evidentiary materials to oppose
18 the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

19 Where the moving party has met its burden, however, the burden shifts to the
20 nonmoving party to establish that a genuine issue of material fact actually exists.
21 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The
22 nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co.*
23 *v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation
24 omitted). In other words, the nonmoving party may not simply rely upon the allegations or
25 denials of its pleadings; rather, they must tender evidence of specific facts in the form of
26 affidavits, and/or admissible discovery material in support of its contention that such a
27 dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden
28 is "not a light one," and requires the nonmoving party to "show more than the mere

existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## III. DISCUSSION[3]

### A. Count I – Eighth Amendment Failure to Protect

Under the Eighth Amendment, prison conditions should not "involve the wanton and

---

[3] The Court will not address any argument related to Laxalt, Cegavske, and Sandoval, as these Defendants are no longer parties to this action because they were dismissed from this action by stipulation of the parties. (*See* ECF Nos. 26, 28.)

unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation and quotation marks omitted). "[P]rison officials have a duty … to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citation and quotations omitted); *see also Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (citing *Farmer*, 511 U.S. at 833). "Having incarcerated 'persons [with] demonstrated proclivity[ies] for antisocial criminal, and often violent, conduct,' have stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (citing *Rhodes*, 452 U.S. at 347).

To establish a violation of this duty, the inmate must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. Farmer, 511 U.S. at 834. Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See id.* at 834.

When an inmate claims prison officials failed to take reasonable steps to protect him, he must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citations omitted). This is a question of fact, and "must be decided by the jury if there is any room for doubt." *Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (citation omitted). "[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Id.* at 1076 (citing *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)). It does not matter "whether a prisoner faces an excessive risk ... for reasons personal to him or because all prisoners in his situation face

such a risk." *Farmer*, 511 U.S. at 843.

The inmate must also satisfy the subjective element. This means that the prison official being sued must have known of and disregarded the risk to the inmate's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Further, a plaintiff "must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by* City of Reno, Nev. v. Conn, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

### 1. Analysis

Count I of the Complaint is an Eighth Amendment failure to protect claim against Defendants Fonseca, Smith, and Baca. (ECF No. 1.) Defendants' motion for summary judgment argues there is no evidence that any of the Defendants were aware of a substantial risk to Burton's safety and this was a "sudden tragic event." (ECF No. 84 at 7.) Plaintiffs' motion for summary judgment asserts that Defendants Fonseca and Baca knew of Rowland's white supremacist background and took no actions to protect Burton. (ECF No. 85 at 12.) Plaintiffs further argue that there is no evidence to rebut their expert's opinion that the impromptu meeting and subsequent reclassification of an AB dropout did not violate the policy of the NDOC. (*Id.*) Plaintiffs do not appear to move for summary judgment as to Defendant Smith.

In response to Plaintiffs' motion for summary judgment, Defendants assert that "at a minimum, there is a genuine issue of material fact for trial." (ECF No. 88 at 8.) Defendants assert that the Classification Committee reviewed Rowland's file, including his past incidents, and decided that his recent behavior qualified him for placement in a medium security unit. (*Id.*) Defendants assert that Plaintiffs' motion does not provide any evidence of either facts from which the inference could be drawn that placing Rowland at NNCC would create a substantial risk of serious harm to Burton or any other inmate in that yard, or that any Defendant in fact drew such an inference and disregarded it.

Here, the Court finds genuine issues of material fact exist as to whether Defendants failed to take reasonable steps to protect Burton from attack by Rowland when they had knowledge of his AB status (whether former or current) and whether it was appropriate to allow Rowland to be housed in general population. Because there is a question, which Defendants concede, and room for doubt, this claim must be decided by the jury. *See Lemire*, 726 F.3d at 1075.

Based on the evidence before the Court there are genuine issues of material fact that preclude summary judgment. Accordingly, the Court recommends that both Defendants' and Plaintiffs' motions for summary judgment (ECF Nos. 84, 85) be denied.

### B.   Count II – Eighth Amendment Supervisory Liability

"There are two elements to a section 1983 claim: (1) the conduct complained of must have been under color of state law, and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights." *Jones v. Cmty. Redevelopment Agency of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984). A prerequisite to recovery under the Civil Rights Act, 42 U.S.C. § 1983, is that the plaintiff prove that the defendants deprived him of a right secured by the Constitution and the laws of the United States. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985).

Liability under § 1983 arises only upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "[V]icarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L.Ed. 2d 868 (2009).

"A supervisor may be liable only if (1) he or she is individually involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the

supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

### 1. Analysis

Count II is a supervisory liability claim against Defendant Baca. (ECF No. 1.) Defendants' motion for summary judgment argues Plaintiffs' have submitted no evidence to support their claim that, as a result of gang activity, racial tension and staffing issues, black inmates were vulnerable to physical attack, but Baca failed to take any action to protect them. (ECF No. 84 at 15.) Plaintiffs' motion for summary judgment argues that Baca is directly responsible for re-classifying someone he knew was a white supremacist as a defector of the AB without any evidence or support for that reclassification and Baca placed Rowland into general population, despite knowing that a white supremacist will harm members of other racial groups. (ECF No. 85 at 13.)

In response to Plaintiffs' motion for summary judgment, Defendants again assert that "at a minimum, there is a genuine issue of material fact for trial." (ECF No. 88 at 10.) Again, the Court finds genuine issues of material fact exist as to whether Baca appropriately allowed Rowland to be housed in general population. Because there is a question, which Defendants concede, and room for doubt, this claim must be decided by the jury. *See Lemire*, 726 F.3d at 1075.

Based on the evidence before the Court there are genuine issues of material fact that preclude summary judgment. Accordingly, the Court recommends that both Defendants' and Plaintiffs' motions for summary judgment (ECF Nos. 84, 85) be denied

### C. Counts III and IV – State Law Claims

The parties do not move for summary judgment as to the Nevada State law claims.

Defendants only assert that if summary judgment is granted as to the Eighth Amendment claims, the State Law claims should be remanded to State Court. (ECF No. 84 at 8-10.) Because the Court finds that genuine issues of material fact exist as to the federal claims, it does not find it appropriate to remand the state law claims, and the Court recommends continued exercise of supplemental jurisdiction over those claims.

### D. Qualified Immunity

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988–89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the Court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The Court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42.

"[J]udges of the district courts… should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "[W]hether a constitutional right was violated… is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the Court

1  decides as a matter of law the "clearly established" prong of the qualified immunity
2  analysis, only the jury can decide the disputed factual issues. *See Morales v. Fry*, 873
3  F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. Of Sacramento*, 888 F.3d 1030, 1037 (9th
4  Cir. 2018). While the Court finds a genuine issue of material fact exists as to whether
5  Burton's constitutional rights were violated, the Court will address the "clearly established"
6  prong at this time.

7  Defendants contend they are entitled to qualified immunity on their first cause of
8  action as their actions did not violate clearly established rights of Burton. (ECF No. 84 at
9  10-13.) Specifically, Defendants contend: (1) Fonseca and Smith had no ability to classify
10 the inmates; (2) they had no knowledge of animosity between Burton and Rowland; (3)
11 there was no indication that an altercation would occur on that date; and (4) Defendant
12 Baca was not present when the altercation occurred, and he had no deliberate indifference
13 to Burton's safety. (*Id.* at 13.) This argument misses the point of qualified immunity and
14 whether the law is clearly established.

15 "For a right to be clearly established it is not necessary that the very action in
16 question have previously been held unlawful." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th
17 Cir. 1996) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) "To define the law in
18 question too narrowly would be to allow defendants to define away all potential claims."
19 *Jackson*, 90 F.3d at 332 (citing *Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995)).

20 Defendants cannot claim ignorance to an inmate's right to be protected from
21 violence at the hands of other inmates. That right has been clearly established since the
22 Supreme Court's decision in *Farmer v. Brennan* in 1994. *See* 511 U.S. at 833; *Castro v.*
23 *County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016). The Ninth Circuit has held
24 that it is clearly established that prison officials must "take reasonable measures to
25 mitigate the [known] substantial risk[s]" to an inmate. *Castro*, 833 F.3d at 1067.
26 Accordingly, the Court finds that the constitutional right is clearly established, and
27 Defendants are not entitled to qualified immunity as to the Eighth Amendment failure to
28 protect claim.

## IV. CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' and Plaintiffs' motions for summary judgment, (ECF Nos. 84, 85), be denied.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 84), be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the Plaintiffs' motion for summary judgment, (ECF No. 85), be **DENIED**.

**DATED**: June 23, 2023.

_____
**UNITED STATES MAGISTRATE JUDGE**